**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,  :  Plaintiff,  :  v.  :  GERALD D. HORN,  :  Defendant.  : | CASE NO. 1:10-cv-00955  Hon. John W. Darrah  Magistrate Judge Susan E. Cox |

**U.S. SECURITIES AND EXCHANGE COMMISSION'S SURREPLY TO**
**DEFENDANT HORN'S MOTION FOR SUMMARY JUDGMENT**

The United States Securities and Exchange Commission ("SEC") respectfully files this Surreply to Defendant Horn's Motion for Summary Judgment because in his October 15, 2010 Reply (Docket No. 36) the Defendant (1) improperly expands his materiality arguments despite disclaiming in his Motion that materiality was at issue, and (2) incorrectly accuses the SEC of misrepresenting certain evidence. The SEC feels it is necessary for it to briefly respond to these two discrete issues in order to fully inform the Court in its consideration of the Defendant's July 27, 2010 Motion for Summary Judgment. Accordingly, the SEC respectfully requests that the Court (1) grant the SEC leave to file this Surreply and (2) deny the Defendant's Motion for Summary Judgment.

**I.    Defendant Horn's Access to LCA's Targets**

The Defendant's Reply improperly expands his materiality argument, despite previously claiming that materiality was not at issue. *See* July 27, 2010 Motion for Summary Judgment (Docket No. 25) at 2 ("This Motion does not raise the issue of 'materiality,' and thus it assumes

1

without conceding that as of a given date, [Eyes by Laser] reports might contain material, nonpublic information."). Specifically, the Defendant now argues that the Eyes by Laser reports providing information as to surgical operations to date are insufficient unless Horn also had access to LCA's targets regarding operations performed, going so far as to make this argument in two separate sections of his Reply. *See* Reply at 1-3, 10-12. The Defendant claims that because the SEC did not present evidence on this particular fact in its Opposition, the SEC "concedes that it has no evidence of Dr. Horn's access to the nonpublic information of 'targets' alleged in the Complaint." Id. at 2-3. This is incorrect. The SEC has not conceded and does not concede this. The SEC has evidence that Dr. Horn had access to LCA monthly targets for surgical revenue, as demonstrated below.

In pages 1-3 of his Reply, the Defendant attempts to characterize this targets issue as one of sufficiency of evidence, claiming that the SEC "lacks any evidence of possession of the alleged nonpublic information." Reply at 1. In reality, this is an argument about the materiality of the Eyes by Laser reports, demonstrated by the Defendant's similar argument about LCA's targets on pages 10-12 that claims that the Eyes by Laser reports "are not material" because they alone do not allow precise prediction of LCA's stock price without access to LCA's targets. *See* Reply at 10-12. By disguising this materiality argument as a sufficiency of evidence argument, the Defendant seeks to have it both ways: first state in his Motion that materiality is not at issue, and then make substantial materiality arguments in his Reply that the SEC was not expected to address in its Opposition.

LCA's monthly targets for surgical operations are located on certain Eyes by Laser reports provided to LCA center directors. *See* Exhibit 1, Jodi Mitchell Testimony Transcript excerpts, at 54-64; Exhibit 2 (Excerpt from Testimony Exhibit 24, referenced in Jodi Mitchell

Testimony Transcript). Many of these reports, containing the monthly targets for all months at issue in the Complaint, were found on the various LCA computers at the facilities where Defendant Horn worked. *See* Exhibit 3 (reports containing LCA monthly targets for all months at issue). These reports, and many others, were provided to counsel in May 2010.

As has been established in previous briefs by the SEC and the Defendant, Defendant Horn *routinely* accessed the various LCA computers at the centers where he worked. *See, e.g.,* Exhibit 1 to Docket No. 29, SEC's Statement of Additional Facts, at ¶¶ 3, 5, 6. Thus, a jury can easily infer from these facts that Defendant Horn had access to LCA's monthly targets located in the documents on the LCA computers. Using these monthly targets and the Eyes by Laser Reports containing the actual month-to-date surgical operations performed, Defendant Horn could have easily calculated how far behind or ahead of its targets LCA was at the time of his trades. A jury could easily infer from the totality of the evidence in this case that Defendant Horn did just that.

## II. LCA's Stock Price Movement after Second Quarter Earnings Announcements

In its Opposition, the SEC presented evidence that the Defendant's testimony as to LCA's stock price movement after second quarter earnings announcements is inconsistent with the actual price movement. In his Reply, the Defendant claims that this evidence does not support this conclusion "unless viewed upside down." Reply at 16. The Defendant thus implies that the SEC is either misrepresenting the evidence or at least made a mistake. However, the Defendant actually admits that the SEC's above claim was correct, but buries this admission in his response to the SEC's statement of additional facts (Docket No. 37 at 9-10).

In its Statement of Additional Facts, the SEC claimed that LCA's stock price increased "on the day of the earnings announcement." Exhibit 1 to Docket No. 29 at 5 n.2. In his October

3

15, 2010 Response to the SEC's Statement of Additional Facts, the Defendant quotes this very language, but then quibbles over whether this was the specific price movement the Defendant was referring to in his testimony:

> Exhibit 15, which the SEC has attached, confirms that Dr. Horn is correct, since the charts contained in SEC Exhibit 15 clearly reflect a decrease in LCA stock after the 2d quarter earnings announcements of 2004 and 2005. The fact that there was a momentary increase, i.e. on "the day of the earnings announcement" (SEC statement 14 n.2) does not alter the fact that the price of LCA stock decreased thereafter, since the downward slope of the attached charts is palpable.

Docket No. 37 at 9-10 (Defendant's Response to SEC's paragraph 14, on page 5).

In other words, the Defendant is not actually challenging the SEC's assertion that the price movement charts show that the price of LCA's stock increased on the day of each second quarter earnings announcement. The Defendant only disagrees with the SEC's contention as to what Defendant Horn actually meant when he testified that he predicted based on historical patterns that the price of LCA's stock was "going to go down after the earnings report Q2." Exhibit 4, excerpts from Defendant Horn's September 20, 2006 Testimony, at 54. The SEC believes that, given other testimony he provided regarding these price trends, Defendant Horn was referring to the market's immediate reaction to the earnings announcement.[1] However, the Defendant argues that he was referring not to the market's reaction, but the change in the price of LCA stock occurring at some point <u>after</u> that announcement. See Docket No. 37 at 9-10 (Response to SEC's paragraph 14) ("Dr. Horn's testimony about expected increases or decreases in stock price was not confined to the 'day after' any announcement").

---

[1] For example, Defendant Horn testified that Wall Street would "overly award" LCA Vision in reacting to every First Quarter earnings announcement and "overly punish" LCA Vision for subsequent quarters ( including the Second Quarter). *See* Exhibit 4 at 24-25. A jury could find that this testimony supports the interpretation that Defendant Horn was referring to the market's immediate reaction to the earnings announcement, not the market's activity days or weeks after that announcement. At this stage, the Court must draw such an ambiguity in the SEC's favor.

4

This potential ambiguity alone is a dispute of material fact that supports the denial of summary judgment. Resolving such ambiguity in the Defendant's previous testimony is the role of a jury, not summary judgment. Indeed, all ambiguities at this stage <u>must</u> be drawn in the SEC's favor. <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).

As has been repeatedly demonstrated throughout briefing the present Motion, there are numerous facts in this case, and various inferences that could be drawn from those facts that the Defendant committed insider trading. Weighing these facts and potential inferences is the job of the jury. As a result, for the reasons provided above and in the SEC's September 10, 2010 Opposition, summary judgment is inappropriate in this case. The SEC thus respectfully requests that the Court deny the Defendant's Motion for Summary Judgment.

Respectfully submitted,

s/ Robin Andrews
Robin Andrews, IL Bar No. 6285644
Gregory von Schaumburg, IL Bar No. 3127782
Attorneys for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 900 Chicago, IL 60604
Telephone: (312) 353-7390
Dated: October 20, 2010         Facsimile: (312) 353-7398